UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JASON PLOTZKER, | ) | |
| | ) | |
| Plaintiff, | ) | 19 C 4554 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| EQUIFAX INFORMATION SERVICES LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## Memorandum Opinion and Order

Jason Plotzker brought this suit in the Circuit Court of Cook County, Illinois, against

Equifax Information Services, LLC, alleging that it violated the Fair Credit Reporting Act

("FCRA"), 15 U.S.C. § 1681 *et seq.*, by reporting that certain of his credit card accounts were in

"charge off" status and had been paid late for less than their full balance. Doc. 1-1. Equifax

removed the suit to federal court, Doc. 1, and now moves to dismiss the operative complaint,

Doc. 28, under Civil Rule 12(b)(6), Doc. 29. The motion is denied.

### Background

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative

complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N.*

*Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider

"documents attached to the complaint, documents that are critical to the complaint and referred

to in it, and information that is subject to proper judicial notice," along with additional facts set

forth in Plotzker's brief opposing dismissal, so long as those additional facts "are consistent with

the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013)

(internal quotation marks omitted). The facts are set forth as favorably to Plotzker as those

materials allow.  *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016).  In setting forth the facts at the pleading stage, the court does not vouch for their accuracy.  *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

Plotzker, an adult at all relevant times, had two Visa credit card accounts with Chase Bank.  Doc. 28 at ¶ 4.  He was unable to remain current on his accounts due to several hundred charges stemming from internet sports bets he had made.  *Id*. at ¶ 5.  Plotzker believes that Chase, pursuant to its own policies and the Unlawful Internet Gambling Enforcement Act of 2006, should not have processed the gambling charges.  *Ibid*.

Beginning in 2016, Plotzker and his counsel attempted to resolve the credit card accounts with Chase.  *Id*. at ¶ 6.  While negotiations were ongoing, Chase charged off the debts, indicating that it had no expectation of collecting.  *Ibid*.  Equifax reported that the accounts were delinquent and charged off, resulting in Plotzker's credit score suffering a significant decrease.  *Id*. at ¶ 7.  On April 12, 2017, Plotzker's counsel wrote to Equifax to dispute the report, and Equifax responded that it had conducted an investigation and would not change the report.  *Id*. at ¶ 8.

On October 31, 2017, Plotzker and Chase settled, with Plotzker paying less than 20 percent of the amounts allegedly owed and Chase agreeing to accept that sum as full payment.  *Id*. at ¶ 9.  Plotzker promptly paid the amount due under the settlement.  *Ibid*.

Following the settlement, Plotzker reviewed a November 1, 2017 summary of his Equifax credit report.  *Id*. at ¶ 10.  On December 6, 2017, his counsel wrote to Equifax to dispute the report's accuracy as to the Chase accounts.  *Ibid*.  Specifically, counsel objected that the report continued to reflect that the accounts had been delinquent, reported that the debt on each account was "bad debt" and placed for collection and skip, continued to reference a charge off, reported the balance as including the gambling charges, and did not report that the dispute had been

resolved via settlement. *Ibid*. Counsel included copies of the letters that Plotzker's mom had sent to Chase confirming the settlement and copies of Plotzker's checks. *Id*. at ¶ 11; *id*. at pp. 18-22. Counsel asked Equifax to delete all references to Plotzker's paying late or to a charge off, and further asked that any reference to the settlement state that the disputed debt had been satisfactorily resolved and that the account had a zero balance. *Id*. at ¶ 11.

On December 22, 2017, Equifax sent Plotzker a letter informing him that it had investigated his disputes and declined to make the changes he requested. *Id*. at ¶ 12. As of December 27, 2017, Plotzker's Equifax credit report reflected that his Chase accounts were "Bad debt & placed for collection & skip." *Id*. at ¶ 15. The reported balances for those accounts continued to reflect the disputed gambling charges. *Ibid*. The report further marked each account with "FP" (meaning failure to pay) for all but one month of 2017 and indicated late payments for July through December 2016. *Ibid*.

On January 2, 2018, an Equifax employee informed Plotzker over the phone that Equifax's process for investigating his dispute involved someone at Equifax looking at the dispute letter and electronically processing and communicating the relevant information to Chase, with Chase responding that the debt was valid and settled for less than the amount due. *Id*. at ¶ 13. Equifax did not conduct any further investigation. *Id*. at ¶ 14.

On March 9, 2019, Plotzker submitted to Equifax a dispute concerning alleged inaccuracies in his credit report dated January 31, 2019. *Id*. at ¶ 16. Specifically, Plotzker disputed: "(a) the Credit Report's description of the Chase VISA Cards being late in payment by 30, 60, 90, 120 and 150 days and ultimately charged off; (b) describing the status of the two Chase VISA Accounts as 'Charge Off'; and (c) stating that the two accounts were 'paid for less than full balance.'" *Ibid*. On March 21, 2019, Equifax advised Plotzker that no changes would

be made to his report. *Id*. at ¶ 17. Had Equifax removed the disputed material from Plotzker's report, his credit score would have improved. *Id*. at ¶ 18.

Due to the disputed material in his credit report, Plotzker was unable to secure financing for a business he was to start; was turned down for credit cards; experienced significant emotional turmoil, mental harm, and distress; and went through panic attacks and a visit to the emergency room. *Id*. at ¶ 23.

## Discussion

The operative complaint alleges FCRA violations under §§ 1681e(b) and 1681i(a). Section 1681e(b) provides: "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). Section 1681i(a) provides in pertinent part:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

*Id*. § 1681i(a)(1)(A). Plotzker maintains that Equifax's failure to correct the alleged inaccuracies in his credit report after he disputed them violated its obligation to follow "reasonable reporting procedures to assure maximum possible accuracy" and to "employ reasonable reinvestigation procedures" following a dispute. Doc. 40 at 1-2 (internal quotation mark omitted). In seeking dismissal, Equifax argues that the complaint does not allege that it reported inaccurate information, Doc. 30 at 7-8, and improperly launches a collateral attack on the validity of Plotzker's debts to Chase, *id*. at 9-13.

4

To state a claim under §§ 1681e(b) or 1681i(a), a plaintiff must allege that his consumer report included inaccurate information.  *See Childress v. Experian Info. Sols., Inc.*, 790 F.3d 745, 747 (7th Cir. 2015) (affirming summary judgment on a § 1681e(b) claim because there was "no inaccuracy in the statement in the plaintiff's credit report"); *Wantz v. Experian Info. Sols.*, 386 F.3d 829, 834 (7th Cir. 2004) ("In the absence of evidence that Experian disclosed incorrect information about the Virginia judgment to a third party, Wantz cannot even show that it violated the Act's reinvestigation requirement … ."), *abrogated on other grounds by Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007).  The FCRA does not impose strict liability on credit reporting agencies for such inaccuracies—rather, where an agency reports information from a generally reliable source, it "must be notified of an error before it is required to reinvestigate."  *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 971 (7th Cir. 2004); *see also Ruffin-Thompkins v. Experian Info. Sols., Inc.*, 422 F.3d 603, 608 (7th Cir. 2005) (same).

Several appeals courts "have held that a credit entry can be 'incomplete or inaccurate' within the meaning of the FCRA 'because it is patently incorrect, *or* because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.'" *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009) (emphasis added) (quoting *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir.1998)); *see also Seamans v. Temple Univ.*, 744 F.3d 853, 865 (3d Cir. 2014) ("[E]ven if the information [on a credit report] is technically correct, it may nonetheless be inaccurate if, through omission, it create[s] a materially misleading impression.") (second alteration in original) (internal quotation marks omitted); *Saunders v. Branch Banking & Tr. Co. of Va.*, 526 F.3d 142, 148 (4th Cir. 2008) ("[A] consumer report that contains technically accurate information may be deemed 'inaccurate' if the statement is presented in such a way that it creates a misleading impression.");

*Koropoulos v. Credit Bureau, Inc.*, 734 F.2d 37, 40 (D.C. Cir. 1984) ("[W]e do not agree … that section 1681e(b) makes a credit reporting agency liable for damages only if the report contains statements that are technically untrue. … Certainly reports containing factually correct information that nonetheless mislead their readers are neither maximally accurate nor fair to the consumer who is the subject of the reports.").  Although the Seventh Circuit has not decided whether FCRA liability can arise from a technically accurate but misleading report, *see Aldaco v. RentGrow, Inc.*, 921 F.3d 685 (7th Cir. 2019) ("We have not addressed whether technically accurate but misleading information qualifies as 'inaccurate' information under the [FCRA]."), numerous decisions in this District hold that it can, *see, e.g.*, *Taylor v. Screening Reports, Inc.*, 2015 WL 4052824, at *4 (N.D. Ill. July 2, 2015) ("[I]n light of the text of § 1681e(b) and the FCRA's concern for fairness to consumers, a defendant can be liable under § 1681e(b) for a technically accurate but materially misleading report.  Therefore, a plaintiff can adequately allege the inaccuracy element of a § 1681e(b) claim by pleading facts plausibly suggesting either that the report at issue was technically inaccurate or that it was sufficiently misleading to qualify as inaccurate.") (citations omitted); *Curtis v. Trans Union, LLC*, 2002 WL 31748838, at *5 (N.D. Ill. Dec. 9, 2002) (holding that Trans Union's failure to "include[] information about [the plaintiffs'] pending state lawsuit" created a "genuine issue of fact … as to whether Trans Union's failure to include more information … is so misleading as to be 'inaccurate' within the meaning of the FCRA").  Because Plotzker urges the court to follow those decisions, Doc. 40 at 3-4, and Equifax does not argue otherwise, the court will do so.

The court first addresses whether the complaint states an FCRA claim based on a literally false—as opposed to a true but misleading—statement in Plotzker's credit report.  Although the complaint identifies several allegedly literally false statements, Doc. 28 at ¶¶ 10, 15-16, Plotzker

presses only two in his opposition brief. The first is the report's statement that his Chase accounts were "Bad debt & placed for collection & skip." Doc. 40 at 2-3. Because neither the complaint nor its exhibits indicate that Plotzker notified Equifax that it was inaccurate to report the accounts as "placed for collection & skip," that statement cannot ground his FCRA claim. *See McClelland v. Experian Info. Sols., Inc.*, 2006 WL 2191973, at *3 (N.D. Ill. July 28, 2006) (holding that the plaintiff's FCRA claim could not rely on inaccurate reporting from the period before his dispute letter gave the credit reporting agency "reason to be aware of a potential error in [his] credit report"); *Bagby v. Experian Info. Sols.*, 2004 WL 1244113, at *2 (N.D. Ill. June 7, 2004) (holding that the plaintiff could not "sustain a § 1681e(b) claim for the period before November 2002," when she first sent the agency "her dispute letter"); *Quinn v. Experian Sols.*, 2004 WL 609357, at *3-4 (N.D. Ill. Mar. 24, 2004) (holding that the plaintiff's FCRA claims could not rely on inaccurate reporting from the period before he submitted his dispute, reasoning that credit reporting agencies need not "independently verify[ ] information provided by credit grantors unless the credit agency kn[ows] or ha[s] reason to know that the credit grantor was unreliable or reporting inaccurate information"). Although Plotzker notified Equifax of *other* allegedly inaccurate statements that, had they been false, might have put it on notice that Chase's information was unreliable, Doc. 28 at pp. 14-16, he now apparently concedes the accuracy of those other statements, Doc. 40 at 3, 7-8 (arguing only that the "charge off" and "Bad debt & placed for collection & skip" statements were inaccurate). Directing Equifax's attention to those true statements therefore could not have put it on notice that Chase was an unreliable source of credit information as to the "placed for collection & skip" statement that Plotzker did not mention. And although, as shown below, the complaint survives dismissal as to allegedly misleading *omissions* from his credit report, the fact that he notified Equifax of those omissions

7

did not place it on notice that other statements *included* in his report might have been inaccurate or that Chase was a generally unreliable source of the credit information it in fact provided.

Plotzker did notify Equifax that he believed the phrase "bad debt" inaccurately reflected the status of his Chase accounts. Doc. 28 at pp. 15-16. But Plotzker does not explain in his opposition brief why the "bad debt" statement was inaccurate, thereby forfeiting the point. *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court. That is true whether it is an affirmative argument in support of a motion to dismiss or an argument establishing that dismissal is inappropriate.") (citations omitted); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("Our system of justice is adversarial, and our judges are busy people. If they are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning.") (internal quotation marks omitted); *see also Boogaard v NHL*, 891 F.3d 289, 294-96 (7th Cir. 2018) (affirming the district court's holding that the plaintiffs forfeited their claims by failing to respond to the defendant's argument under Rule 12(b)(6) that they failed to state a claim).

Second, Plotzker challenges as literally false Equifax's "report[ing] the Chase accounts of having a current status of 'charge off,' even following [his] payment of the full amount of the settlement to Chase." Doc. 40 at 7. But the complaint itself alleges that "Chase charged off the debts on the two Chase VISA Cards on December 31, 2016," Doc. 28 at ¶ 6, so Plotzker cannot plausibly claim that Equifax's "charge off" statement was literally false.

In an effort to overcome that problem, Plotzker argues that Equifax's website states that the term "charge off" is "intended to convey to readers of the credit report that the consumer is

still 'legally obligated to pay the debt,'" which was not true of him. Doc. 40 at 7 (quoting *What is a Charge-Off?*, Equifax, https://www.equifax.com/personal/education/credit/report/charge-offs-faq/ (last visited April 1, 2020)); *see Goplin v. WeConnect, Inc.*, 893 F.3d 488, 491 (7th Cir. 2018) (holding that the "district court did not violate the rules of judicial notice by reviewing [the defendant company's] website" where the plaintiff cited the website in opposing the defendant's motion to dismiss). But that same website answers the question "If I pay the debt, will it remain on credit reports?" by stating: "Yes, though it will show as a paid charge-off or paid collection when reported as paid by the lender … ." *What is a Charge-Off?*, Equifax, *supra*. As Equifax observes, Doc. 41 at 3, the phrase "Account Paid For Less Than Full Balance" in Plotzker's credit report follows shortly after each statement that his accounts were in charge off status. Doc. 28 at pp. 28, 30. One account also is described as "Paid Charge Off." *Id*. at 29. Accordingly, the Equifax website providing the sole basis for Plotzker's argument that "charge off" is a literally false description of his accounts' status defeats that argument. As the website makes clear, "charge off" accurately describes charged off accounts even after the debtor pays, so long as the report adds that the accounts are paid, as was the case here.

Plotzker fares better with his argument that Equifax's *omission* of information about his legal dispute with Chase made the credit report misleading. Specifically, Plotzker contends that Equifax's descriptions of his Chase accounts as "charge off" and "paid for less than full balance," even if literally true, are "sufficiently misleading or incomplete as to allow [him] to state a claim … that [Equifax's] report is 'inaccurate' within the meaning of the FCRA." Doc. 40 at 3. According to Plotzker, once he notified Equifax that his Chase accounts were settled due to a dispute concerning the legal validity of his debts, Equifax's failure to report that information rendered his credit report misleading and thus actionable under the FCRA. Doc. 40

at 4-8. That is, Plotzker submits that by omitting that information and reporting that his account was in "charge off" status and "Paid for Less Than Full Balance," Equifax wrongly implied that he had settled with Chase due to an inability to pay rather than due to a legal dispute regarding the validity of his debts, thereby causing him "to be undeservedly assessed as a much worse credit risk." *Id*. at 5.

Equifax does not contest that the credit report failed to reflect that Plotzker disputed the legal validity of his debt, nor does it contest that including such information would have resulted in lenders considering him less of a credit risk. Instead, Equifax advances two arguments. First, it contends that the principal case on which Plotzker relies, *Curtis v. Trans Union, LLC*, *supra*, does not support his position. In *Curtis*, the plaintiffs' credit reports accurately stated that they had ceased making payments on an auto loan and that the subject vehicle had been repossessed, but omitted mention—despite the plaintiffs' protest—of their favorable arbitration rulings against the dealer and creditor and of pending state court litigation, both of which concerned the dealer's misrepresentations about the vehicle's condition. 2002 WL 31748838, at *2. Even though no information in the credit report was technically false, the *Curtis* plaintiffs' § 1681i claim survived summary judgment because the credit reporting agency "could have included information about [the plaintiffs'] pending state lawsuit, as [they] suggested, rather than merely include the information about the repossession and unpaid balance, which is information that clearly can be expected to adversely affect credit decisions." *Id*. at *5. Even if Equifax is correct that the omitted information in *Curtis* was more decisive and favorable for the plaintiffs than the information Plotzker asked Equifax to include, Doc. 41 at 4-6, *Curtis* still supports the general proposition that omitting information concerning the reason a debt was paid for less than full dollar can render a technically accurate report misleading under the FCRA. Viewing the

complaint's allegations in the light most favorable to Plotzker, the court cannot say at this early stage that Equifax's alleged omission was not misleading.

Second, Equifax submits that Plotzker's claim is an improper collateral attack on the validity of his debts to Chase.  Doc. 30 at 9-13; Doc. 41 at 6-7.  True enough, the FCRA does not require a credit reporting agency to conduct its own, independent investigation into the validity of a consumer's debt.  *See Brill v. TransUnion LLC*, 838 F.3d 919, 921-22 (7th Cir. 2016) (holding that the credit reporting agency had no duty to verify the accuracy of a signature on an automobile lease that the plaintiff asserted was forged).  But rather than ask Equifax to make an "independent legal determination or take sides on who is right in the validity challenge," Plotzker asks only that Equifax report "that the Chase debt was the subject of dispute as to the validity of the debt, that the issue was legally resolved via settlement, and that Plotzker *fully* satisfied any obligations to Chase through payment of the settlement amount."  Doc. 40 at 9-11. Accordingly, Plotzker's claim cannot be dismissed as a collateral attack on the validity of his debts or as resting on the impermissible suggestion that Equifax should have weighed in on the validity of those debts.  *See Curtis*, 2002 WL 31748838, at *5 (although state court litigation regarding the plaintiffs' alleged debt was ongoing, denying summary judgment on the plaintiffs' claim that it was misleading for the credit reporting agency to omit from their credit reports information regarding that lawsuit).

## Conclusion

Equifax's motion to dismiss is denied.

April 1, 2020

_____
United States District Judge